COMMERCIAL UNION COMPANIES and Burgess Construction Company, Appellants,

v.

William S. SMALLWOOD and Alaska Workmen's Compensation Board, Appellees.

No. 2443.

Supreme Court of Alaska.

March 8, 1976.

Timothy M. Stone, of Hagans, Smith & Brown, Anchorage, for appellants.

Patrick T. Brown, of Rice, Hoppner & Hedland, Fairbanks, for appellee, William Smallwood.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

## OPINION

RABINOWITZ, Justice.

In October of 1973, appellee William S. Smallwood filed an application for adjustment of claim with the Alaska Workmen's Compensation Board, alleging that as a result of his employment with appellant Burgess Construction Company he suffered renal failure which necessitated the removal of his kidneys.[1]

The evidence presented at the Board hearing consisted of the testimony of Smallwood and of Phil Tannehill, another truck driver. In addition, Smallwood's attorney introduced, over objection, medical reports furnished by Doctors Tenckhoff and Wood, two treating physicians. Tannehill testified that he was employed as a truck driver on the North Slope Haul Road during the same period that Smallwood was working for Burgess Construction on that and similar roads. According to Tannehill, the road conditions were so bad that travel took place at speeds between 10 and 25 miles per hour.[2]

Smallwood related that he began driving on the North Slope road in 1968 and was one of the first to begin working on this project. Smallwood characterized the working conditions as extremely primitive, making driving very bumpy and taking a heavy toll on the drivers. He stated that on some occasions his urine looked like "strawberry soda pop."[3]

Under these primitive conditions, Smallwood often carried his own food, consisting of canned goods and sandwiches, in his cab. He attempted to use as little salt as possible, although on occasion he had to eat at mess halls where "you pretty well got to eat what you get." During this period, Smallwood experienced numerous periods of fatigue but assumed they were due to overwork. He made several trips to physicians to treat colds, and none of these established any acceleration of his kidney problems. By 1970 his kidneys had deteriorated to the point that he requested he be taken off the job. After a transfer to another camp, Smallwood returned to Fairbanks where he was given a less taxing job. Within three months, suffering from kidney failure, he was admitted to the Fairbanks Memorial Hospital.

Prior to the June 4, 1974, hearing held before the Board, Smallwood's counsel furnished appellants with a copy of his medical records from 1965 through the operation. In November of 1973 appellants were provided with a medical report authored by Dr. H. Tenckhoff containing a description and diagnosis of Smallwood's

---

1. Smallwood had suffered glomerulonephritis for a period of 20 to 25 years prior to his kidney failure. When the disease was first diagnosed, he was told that he should experience no problems arising out of his condition until he was "a real old man" and was further advised by his doctors to follow a low salt diet. The thrust of Smallwood's evidentiary presentation before the Board was that working conditions exacerbated his pre-existing kidney problem. He is presently receiving medicare and disability benefits.

2. Tannehill further stated, "[A]ll your insides are sore." On one occasion Tannehill noticed blood in his urine. While he sought immediate medical treatment for this condition, no definite cause for the blood in his urine could be ascertained.

3. Smallwood worked extremely long hours and when he slept it was often in the cab of his truck. More particularly he stated that:

   And you would run all day and all night to the point where many times I dropped asleep right at the wheel and the truck just died right there. We travelled at—we couldn't average much over ten or fifteen miles an hour . . . . [W]e always had cats and road graders with us and couldn't go that fast. All the cat could do was just scrape the snow off and the brush and you would sit in the truck. . . . It would drive you wild. . . . Some of them [drivers] just got off and rode in the pickup and the foreman had to get in and drive their equipment. They just couldn't take it, it would be so bad.

kidney failure. Subsequent reports by Dr. Tenckhoff and Dr. Wood were sent to appellants as received, the last being sent at least 30 days prior to the June 1974 hearing. In essence, these medical reports establish that hypertension is a cause of kidney failure. Both physicians agree that medical attention could have controlled the hypertension problem. Dr. Tenckhoff also asserts, and Dr. Wood apparently agrees, that if working and living conditions were such that for extended periods Smallwood was unable to adhere to dietary restrictions and did not obtain medical treatment, " . . . it remains entirely plausible . . . that accelerated hypertension should have developed as it did. . . ." [4]

Prior to the hearing, appellants objected in writing to the introduction of any medical reports unless given the opportunity to cross-examine the physicians making the reports.[5] At the hearing appellants objected to the introduction of these medical reports, and while the reports were received, in its order awarding Smallwood compensation the Board expressly disavowed any consideration of, or reliance upon, them.[6] The matter was then appealed to the superior court where an order was issued remanding the case to the Workmen's Compensation Board for reconsideration.[7]

4. There was testimony given at the hearing which established that Smallwood periodically returned to Fairbanks and, when there, could have sought medical follow up. Appellants argue that the language of the letters was based upon the doctors' inaccurate belief that Smallwood remained at his work camp destinations for extended periods of time. Appellants urge that the doctors were misinformed as to the circumstances of Smallwood's employment and cross-examination would have revealed this. We question whether it was prejudicial for appellant to `be unable to show, through the doctors, that the doctors' understanding of appellee's employment situation was incorrect and misleading for purposes of determining whether employment caused the injury. The doctors' testimony consisted of an assertion that *if* conditions of employment prevented adherence to a low salt diet and prevented medical follow-up, then " . . . it remains entirely plausible . . . that accelerated hypertension should have developed as it did—leading over a short time span to irreversible kidney failure." The Board could still determine, based on the testimony presented, whether employment conditions were as the doctors believed them to be. It is open to the Board to draw conclusions, therefore, about the relevance of the doctors' testimony. Thus, we are not deciding whether it was prejudicial to deny appellants the right to cross-examine these doctors regarding the premises on which they base their conclusions. Rather, we here explore the broader question of the substance and contours of the right to cross-examine the author of any document sought to be introduced by an opposing party in a workmen's compensation hearing.

5. On January 30, 1974, counsel for appellants informed the Board that they would object to the use of the report of Dr. Tenckhoff dated October 29, 1973, because, in addition to other objections, "admission of that report into evidence would deny to defendants the opportunity for cross-examination." The record shows that this notice was never withdrawn and was reiterated on May 23, 1974, with respect to subsequent letters addressed to Smallwood's attorney, which letters contained medical evaluations of Smallwood's claim.

6. The Board's decision stated in part:
We find from the evidence of the applicant's testimony corroborated by the testimony of Tannehill, that the working conditions on the North Slope haul road were rough on drivers. We find that the conditions of employment for the defendant did prevent him from adhering to his salt free diet, aggravated applicant's hypertension and activated applicant's pre-existing kidney disease which had been present but not disabling for the past 20 to 25 years.
In appealing this order to the superior court, appellants argued that the Board could not have drawn a causal connection between low salt diets, hypertension, and kidney failure without considering the medical reports they purportedly declined to consider. Further, appellants argued that the Board should not have considered the medical letters because no opportunity to cross-examine had been furnished the employer.

7. AS 44.62.570(d) provides:
The court may augment the agency record in whole or in part, or hold a hearing de novo. If the court finds that there is relevant evidence which, in the exercise of reasonable diligence, could not have been produced or which was improperly excluded at the hearing, the court may (1) enter judgment as provided in (e) of this section and remand the case to be reconsidered in the

The superior court's order directed the Board to take the medical reports into account, and further held that appellants had waived their right to cross-examine the physician authors by virtue of their failure to exercise the right of cross-examination prior to the June 1974 Board hearing. The superior court judge reasoned that because appellants had knowledge of the identity of Smallwood's physicians and "ample opportunity" to inquire into and examine the physicians' reports prior to the hearing, appellants waived any right to cross-examine physicians. Appellants now bring this appeal from the superior court's order of remand.

We hold that in the particular factual circumstances of this case appellants did not waive their right to cross-examine the authors of the medical reports which Smallwood proffered to the Board. Approximately four months prior to the Board's hearing in the case at bar, this court addressed the question of the scope of the right of cross-examination in workmen's compensation proceedings. *Employers Commercial Union Insurance Group v. Schoen*, 519 P.2d 819 (Alaska 1974). *Schoen* served to illuminate the tension between the Alaska Workmen's Compensation Board's stated preference for written evidence [8] and the constitutional and statu-

---

light of that evidence; or (2) admit the evidence at the appellate hearing without remanding the case.

The superior court actually cited AS 44.62.-570(b)(3) in its order. That subsection concerns inquiry as to whether there was a prejudical abuse of discretion. Reading the order as a whole, we are convinced that the statutory basis of remand was AS 44.62.570 (d).

8. 8 AAC 45.080 provides in part:

*Written evidence and reports.* (a) Where written evidence is filed in lieu of oral evidence as in the form of payrolls, sufficient correct copies thereof shall be prepared by the party filing and shall be served upon the adverse parties 10 days before the hearing unless a satisfactory showing is made that such reports or records were not available for service within said time.

(b) Certified copies of the reports or records of any governmental agency, division, or bureau will be accepted in evidence in lieu of the original thereof.

(c) The board favors the production of medical evidence in the form of written reports. These reports should include

(1) history of the injury;

(2) source of all facts set forth in the history and complaints;

(3) findings on examination;

(4) the patient's complaints;

(5) opinion as to the extent of disability and working ability;

(6) cause of the disability;

(7) medical treatment indicated;

(8) likelihood of permanent disability;

(9) if permanent disability exists, whether it is ready for rating, and detailed factors on which a rating should be based;

(10) the reasons for opinions.

(d) Upon the filing with the board by any party in interest of an application or other pleading, all parties to the proceeding must immediately, or in any event within five days after service of such pleading, send to the board the original signed reports of all physicians relating to the proceedings which they may have in their possession or under their control. Copies of such reports shall be served by such party forthwith on the adverse party. In the event that any original signed report is not available for filing, the board, or hearing member, on proper showing may admit in evidence a clear and legible copy of the report.

(e) All physicians' reports acquired by any of the parties subsequent to the time specified in (d) and during the pendency of the particular phase of the proceeding shall immediately, or in any event within five days of receipt, be sent to the board and copies served as provided in (d).

.   .   .   .   .

(h) If a party to a proceeding fails or refuses to comply with the provisions of (d) to (g) of this section, inclusive, the board, or member, may decline to receive in evidence any physician's report or other written testimony from a physician whose report has not been so filed. It shall be presumed that the report of evidence withheld in violation of said sections was wilfully suppressed and would be adverse if produced. In addition, the board, or member, may take such other actions as may be authorized by law.

.   .   .   .   .

(k) All parties, their attorneys and representatives shall be given the opportunity to examine hospital records in all pending

tory[9] rights of cross-examination, in a factual context where the challenged medical reports were submitted to the insurer on the morning of the hearing before the Board. Recognizing that a procedural system where intention to cross-examine can be noted prior to the hearing[10] " . . . may survive constitutional and statutory scrutiny on a case-by-case basis because the system would subject the right of cross-examination to waiver rules without denying the right altogether" and that, in *Schoen*, the insurer had " . . . no opportunity to comply with such a rule . . . .",[11] we affirmed the superior court's remand to the Workmen's Compensation Board to allow cross-examination. Of particular significance to the resolution of this appeal is the conclusion we reached in *Schoen* that:

> . . . the statutes permitting informal administrative proceedings, AS 44.62.460 (d) and AS 23.30.135(a), were never intended to, and could not, abrogate the right to cross-examination in an adjudicatory proceeding.

We therefore hold that the statutory right to cross-examination is absolute and applicable to the Board.[12]

Appellants persuasively argue that they attempted to invoke this absolute right of cross-examination at the June 1974 hearing when they objected to the admission of the medical reports of Dr. Tenckhoff and Dr. Wood.[13] We think this position is sound

cases and be permitted to make copies of all or any part of such records. In the event that a hospital record is introduced in evidence in a proceeding, service of such record is not required. Such hospital records may be returned to the hospital at any time within the discretion of the board.

9. Alaska's Administrative Procedure Act, applicable to Board hearings, provides in AS 44.62.460(b) that:

> Each party may (1) call and examine witnesses; (2) introduce exhibits; (3) cross-examine opposing witnesses on matter relevant to the issues, even though that matter was not covered in the direct examination; (4) impeach a witness regardless of which party first called the witness to testify; and (5) rebut the evidence against himself.

The Board's rules parallel AS 44.62.460 (b) in that 8 AAC § 45.120(b) provides in part:

> Each party shall have these rights: to call and examine witnesses; to introduce exhibits; to cross-examine opposing witnesses on any matter relevant to the issues even though that matter was not covered in the direct examination. . . .

In *Schoen* we noted that the Board's rules provide that affidavits may be introduced in lieu of oral testimony, but that an opposing party has the right to cross-examine the affiant. "If no notice of intention to cross-examine is filed, the right to cross-examine is deemed waved. Nothing in the affidavit rule indicates that it applies to medical reports, and the procedure in this case indicates that the Board interprets the rule to be inapplicable to medical reports." *Employer's Commer-*

*cial Union Ins. Group v. Schoen*, 519 P.2d 819, 822 (Alaska 1974).

8 AAC § 45.120(d) provides:

Affidavits in lieu of oral evidence:

(1) Evidence may be introduced by any party in affidavit form in lieu of oral testimony and shall be given the same effect as if the affiant had testified orally, provided that the opposing parties shall have the right, on request made prior to submission of the case for decision, to cross-examine the affiant. At the time the affiant is introduced, the board, or member shall give notice of the right to cross-examination and copies shall be delivered to the opposing parties.

(2) Prior to the hearing, any party may mail or deliver any affidavits to the opposing parties, together with a notice that it is proposed to introduce such affidavits at the hearing in lieu of oral testimony, and unless an opposing party or parties files a request to cross-examine a particular affiant at the hearing, the right to cross-examine such affiant shall be deemed waived. If any party requests the right to cross-examine an affiant, the affidavit of that affiant may be introduced in evidence only if the right to cross-examine him is afforded at the hearing.

10. *See* note 9 *supra* where the text of the Board's affidavit rule is set out in full.

11. *Employers Commercial Union Ins. Group v. Schoen*, 519 P.2d 819, 823 (Alaska 1974).

12. *Id.* at 824 (footnote omitted).

13. Although the Board did not make an explicit ruling on the objection to the reports, appellants view the Board's statement that

and find nothing in the conduct of appellants which constituted a waiver of their right to cross-examine the authors of the medical reports. Appellants first objected to the use of the medical reports approximately five months prior to the June 1974 Board hearing.[14] Nothing in our decision in *Schoen* would have alerted appellants that a failure on their part to make "inquiry" regarding the disclosed medical reports would result in a waiver of their right to cross-examine Smallwood's physicians.[15] On the contrary, we explicitly said in *Schoen* that:

> First, Schoen argues that waiver should be inferred from Employers' failure to seek discovery of medical evidence prior to the Board hearing. Although failing to engage in discovery may or may not be a wise tactic, it is not a waiver of the right to challenge the evidence which is adduced at hearing.[16]

■ Thus, given the absence of any Board rule pertaining to medical reports

which parallels its affidavit rule,[17] and in light of the absence of a system requiring notice of intention to cross-examine to be filed before hearing when medical reports are served upon opposing parties pursuant to the Board's current medical report rules, we are of the view that the superior court erred in its conclusion that appellants had waived their right to cross-examine Dr. Tenckhoff and Dr. Wood.[18]

■ Additionally we note that the better reasoned, and weight of, authority is to the effect that the right of cross-examination does not carry a price tag. We have not been referred to any court decision holding that a party waived his right of cross-examination when to exercise that right would have required that party to bear the initial cost of producing the witness at the hearing.[19] Yet, if appellants in the case at bar desired to exercise their right to cross-examine the physician-authors of the medical reports introduced by Smallwood, they would have had the burden of bearing the cost of subpoenaing them.[20] In light

it did not consider the report as a tacit acknowledgement of the correctness of their objection.

14. *See* note 5 *supra.*

15. We previously noted that this court's decision in *Schoen* was published four months prior to the June 1974 hearing before the Board.

16. *Employers Commercial Union Ins. Group v. Schoen*, 519 P.2d 819, 824 (Alaska 1974).

17. *See* note 9 *supra.*

18. Prior to the June 1974 hearing, the Board had not, in light of the *Schoen* discussion, promulgated any new rules covering medical reports and the right of cross-examination.

19. *E. g., Jones v. Industrial Comm'n*, 1 Ariz. App. 218, 401 P.2d 172 (1965); *Avenente v. Smouse*, 1 Ariz.App. 24, 398 P.2d 932 (1965).
    In *Schoen* we cited *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). There the Supreme Court rejected a social security disability claimant's allegation that he had been denied the right to cross-examine physicians whose reports formed the basis for disallowing his claim, because the claimant had the opportunity to subpoena the doctors but had not exercised it. *Richardson* would be on all fours with

the instant case regarding cross-examination but for one crucial factor. As the United States Supreme Court noted in *Richardson*, 402 U.S. at 397, 91 S.Ct. at 1425, 28 L.Ed.2d 850,

> . . . § 205(d) of the Act, 42 U.S.C. § 405(d), provides that the Secretary has power to issue subpoenas requiring the attendance and testimony of witnesses and the production of evidence and that the Secretary's regulations, authorized by § 205(a), 42 U.S.C. § 405(a), provide that a claimant may request the issuance of subpoenas, 20 CFR § 404.926.

Section 404.926 of Volume 20 of the Code of Federal Regulations provides in part that, "Subpoenas . . . shall be issued in the name of the Secretary . . . and the Social Security Administration shall pay the cost of the issuance and the fees and mileage of any witness so subpoenaed . . . ." Present Alaska law requires the party requesting subpoena to bear such costs. Thus, neither *Schoen* nor *Richardson* stands for the proposition that a party may waive its right of cross-examination if it refuses to bear the cost of producing the party to be cross-examined.

20. AS 23.30.115; AS 44.62.430. In Alaska the party requesting subpoena must pay the fees, mileage, and expenses of the subpoenaed

of the decisional law which enunciates the rule that the constitutional right of cross-examination is not dependent upon a monetary prerequisite, we further conclude that appellants did not waive their right of cross-examination in the case at bar by virtue of their failure to subpoena the authors of the medical reports.

We think it appropriate to mention one additional facet of this appeal. Our study of the record leaves us convinced that the superior court did not weigh the evidence and determine whether the Board's decision was supported by substantial evidence. What occurred here was a remand by the superior court to the Board for inclusion of what the court considered to be erroneously excluded evidence,[21] without requiring any further hearing. A remand is appropriate when the superior court determines that vital evidence has been erroneously excluded before the Board.[22] As we said in *Schoen,* in the circumstances of such a remand, this court is " . . . not inclined to deviate from our previous procedure of requiring the initial examination of the sufficiency of evidence to be made in the superior court rather than undertaking ourselves a review of the record for the first time."[23]

On the other hand, since we have held that appellants did not waive their right to cross-examine either Dr. Tenckhoff or Dr. Wood, we conclude that the superior court's remand to the Board should be modified to include the right of cross-examination and the right of either party to adduce additional medical evidence. The claim in

this case is based on highly technical medical considerations pertaining to the cause of the claimant's renal failure. While valid awards can stand in the absence of definite medical diagnosis, this would appear to be the type of case in which it is impossible to form a judgment on the relation of the employment to the disability without medical analysis.[24]

We thus conclude that the case should be remanded to the superior court with directions to remand to the Board in accordance with the views expressed in this opinion.[25] Inherent in our disposition is the requirement that the Board devise an equitable procedure whereby on remand Smallwood may present his evidence without attaching a financial precondition to appellants' right of cross-examination.

It is apparent that this case illustrates the compelling need for the Alaska Workmen's Compensation Board to promulgate rules which will effectuate the Workmen's Compensation Act's policy of providing inexpensive and expeditious resolutions of claims for compensation while affording due process to all concerned parties. We therefore strongly recommend that the Board adopt procedures which will fill the present procedural void relating to medical reports and the right of cross-examination. In *Employers Commercial Union Ins. Group v. Schoen,* 519 P.2d 819, 823 (Alaska 1974), this court alluded to the possibility of the Board's adopting a procedural system for medical reports similar to the one in effect for affidavits, or a system requiring a notice of intention to cross-examine to be

witness. Because Dr. Tenckhoff resides in the State of Washington, he would be outside the reach of process in this case. *Compare* AS 12.50.010 et seq. Since we do not know whether Dr. Tenckhoff would voluntarily comply with a request for appearance, we decline to consider questions of the weight to be given his letters, assuming they are admissible at all, should he not appear after request.

21. *Compare Employers Commercial Union Ins. Group v. Schoen,* 519 P.2d 819, 825 (Alaska 1974).

22. *Id.;* AS 44.62.570(d).

23. *Id.*

24. 3 Larsen, Workmen's Compensation Law, § 79.51, at 180–87. *Beauchamp v. Employers Liability Assurance Corp.,* 477 P.2d 993, 996 (Alaska 1970).

25. Given the closeness of the question whether Smallwood in fact has sustained a compensable injury and the uncertain state of the law as to appellants' right of cross-examination, we believe a remand to the Board is the most equitable solution at this point in the case.

filed before hearing when the medical reports are served upon opposing parties, pursuant to the Board's current medical report rules.

Some statutory workmen's compensation schemes place a burden upon the hearing body itself to pay the costs of such cross-examination. Several courts have simply stated that to the extent a hearing body chooses to rely on certain information, it must assure the parties of their constitutional rights concerning the manner in which the evidence is considered. *E. g., Jones v. Industrial Commission,* 1 Ariz.App. 218, 401 P.2d 172 (1965). Another possible means of effectuating the right to cross-examination might be to simply tax the extra costs of such examination to the losing party. Additionally, testimony presented by deposition, when notice is given and adequate time for discovery allowed, could substitute for the right to cross-examine at the hearing. *Compare Employers Commercial Union Insurance Group v. Schoen,* 519 P.2d at 822–23 (Alaska 1974).

Reversed and remanded for further proceedings in accordance with this opinion.[26]

---

**26.** Our resolution of this appeal has made disposition of the other issues raised by appellants unnecessary.