(No. 49202.-)

HIGHWAY & CITY TRANSPORTATION, INC., Appellant, v. THE INDUSTRIAL COMMISSION *et al.—* (Will Phillips, Jr., Appellee.)

*Opinion filed April 3, 1978.*

Tim J. Harrington, of Chciago (Robert Guilfoyle, of counsel), for appellant.

Lipnick, Barsy & Joseph, of Chicago (Clarence S. Lipnick and Jack Joseph, of counsel), for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

In this workmen's compensation case, the employee, Will Phillips, Jr., received an award from the arbitrator granting him compensation for 55 percent permanent disability of his left arm. His employer, Highway and City Transportation, Inc., sought review of the award. Upon consideration of additional evidence the Industrial Commission reduced the award to 45 percent permanent disability of the left arm. The employer sought review in the circuit court of Cook County, which confirmed the Commission's award. The employer has appealed to this

court.

The essence of the employer's argument in this court is that the award of the Commission is against the manifest weight of the evidence since the claimant concealed that he had an injury to his left shoulder subsequent to the injury for which the award was made and prior to the hearing before the arbitrator. This second injury occurred in a non-work-related automobile accident. The employer did not learn of it until after the hearing before the arbitrator and now contends that because Phillips testified falsely concerning the subsequent injury his entire testimony should be disregarded. The employer further argues that the award was not based on competent medical evidence since a doctor's report introduced by the claimant did not consider the effect of the second injury.

Phillips was employed as a freight handler. The injury for which compensation is claimed occurred on the morning of August 19, 1974, when his car collided with another employee's car in a parking lot provided by the employer. Phillips was jolted, and his left shoulder struck the inside of the car. He then worked for four hours until noon, reported the accident to his supervisor, and sought treatment at Bethany-Garfield Hospital. X rays were taken at the hospital, and he was told to see his family doctor. He was subsequently treated on five separate occasions by Dr. Risher Watts, Jr. He was absent from work for three weeks.

On September 9, 1974, Phillips filed a claim with the Industrial Commission. At the employer's request, he was examined by Dr. H. C. Coblens in January 1975. On May 16, 1975, he had the second accident in which he reinjured his left shoulder. As a result of the reinjury, he was hospitalized for five days. On August 8, 1975, he was examined by Dr. Leonard Smith, who was apparently unaware of the second injury.

The hearing before the arbitrator was held on August

27, 1975. At this time, the employer had no knowledge that the claimant had reinjured the shoulder on May 16, 1975. During the hearing, Phillips testified as to how the first injury had occurred and his treatment by Dr. Watts and examinations by Dr. Coblens and Dr. Smith. He stated that he suffered pain from the shoulder and only had limited movement, affecting both his personal life and ability to work at his job. During direct examination, the following dialogue took place:

> "Q: Did you ever hurt that shoulder since the date of this accident?
>
> A: Not at the time. It hadn't been hurt, but it has been giving me pain since then.
>
> Q: Have you injured that shoulder again since the accident?
>
> A: No, sir."

The attorney for Phillips then introduced a medical report of Dr. Smith based on the August 8, 1975, examination. As noted above, it appears that Dr. Smith was then only aware of the initial accident of August 19, 1974. The report stated that Phillips complained of tenderness in the acromioclavicular joint. It noted:

> "The patient incurred a subluxation of the left acromio-clavicular joint, which has healed with residual evidence of intermittent synovitis of the left acromio-clavicular joint. This condition is productive of the discomfort, and the only effective treatment would be excision of the distal end of the clavicle. The patient, in any event, will have residual disability involving usage of the left upper extremity."

The employer introduced a medical report by Dr. Coblens dated January 10, 1975, based on X rays taken the previous day. Dr. Coblens noted the absence of soft tissue swelling, atrophy or bony pathology and concluded: "There are no objective abnormal findings to account for the subjective symptoms. There is no reason why this individual should not continue working." On September 4,

1975, the arbitrator entered his award for 55 percent permanent disability of the left arm.

After the award, the employer discovered that Phillips had reinjured his shoulder in the unrelated accident on May 16, 1975. On review, the employer introduced evidence before the Commission which indicated that, as a result of the second accident, Phillips was hospitalized for five days, absent from work for more than two months, and treated by Dr. Milton Miller for traumatic myositis of the lumbar spinal muscle and traumatic tendonitis of his left shoulder. Phillips did not testify before the Commission on review. The only additional evidence submitted on his behalf was a letter by Dr. Leonard Smith, dated March 16, 1976, addressed to Phillips' attorney, which states:

> "Dear Mr. Lipnick:
>
> With regard to your letter of February 3, 1976, I have reviewed the X-rays taken March 25, 1975 of the left shoulder, which do show some widening of the acromio-clavicular joint and an upward shift of the distal end of the clavicle. This would seem to indicate that this condition was present in March of 1975."

On June 29, 1976, the Commission entered a decision modifying the award of 55 percent disability to 45 percent disability.

The employer urges that since Phillips testified falsely that he did not subsequently injure his left shoulder, his testimony concerning his injury should be disregarded. In *McDonald v. Industrial Com.* (1968), 39 Ill. 2d 396, this court rejected the argument that the claimant's false testimony mandated that his entire testimony be disregarded, except insofar as it may be corroborated by other credible evidence. The court stated that the correct rule is that, under such circumstances, the trier of fact *may* disregard the uncorroborated testimony. Thus, in our case the fact that Phillips may have testified falsely did not require that the Industrial Commission disregard his other

testimony concerning his injury, which it obviously did not. Whether or not, under these facts, Phillips' credibility was impeached and whether any credence should be given to his testimony were matters to be determined by the Commission.

The employer attaches considerable significance to the fact that Phillips did not appear at the hearing before the Commission and did not offer evidence explaining his earlier testimony. It is the employer's position that this failure creates a presumption against Phillips, citing *Shumak v. Shumak* (1975), 30 Ill. App. 3d 188. In that case the court stated:

"[W]here a party has the means in his power of rebutting and explaining evidence adduced against him the omission to do so furnishes a strong presumption or inference that he cannot do so. [Citation.]" (30 Ill. App. 3d 188, 190.)

We do not find *Shumak* to be on point or the principle of law quoted helpful. Whatever inferences were permissible from Phillips' failure to testify were to be drawn by the Industrial Commission and not by a court. It would appear that the most severe inference that could have been drawn from the failure to testify would be that Phillips had, in fact, testified falsely, which, as we earlier indicated, does not *require* that all of his testimony be rejected. The employer argues that several developments adverse to Phillips would have occurred had he appeared, testified and subjected himself to cross-examination at the hearing before the Commission. The answer to this argument is that if the employer thought Phillips' testimony was indispensable, his presence could have been compelled by the use of a subpoena (Ill. Rev. Stat. 1975, ch. 48, par. 138.16).

The employer further argues that since Dr. Smith was not aware of Phillips' subsequent injury, the medical evaluation of Dr. Smith as to Phillips' injury and condi-

tion, which was presented to the arbitrator, was meaningless. This, coupled with the negative findings of Dr. Coblens as to Phillips' condition, the employer argues, leaves the employee with no medical support for his claimed injury. It is the employer's position that, in light of the absence of supportive medical testimony and Phillips' false testimony before the arbitrator, the finding of the Industrial Commission is against the manifest weight of the evidence. We do not find *Deere & Co. v. Industrial Com.* (1970), 47 Ill. 2d 144, relied upon by the employer, to be helpful. In that case, the issue was whether the claimant's injury was due to an industrial accident. The entire course of the employee's conduct indicated the injury was not related to work. The only evidence in his favor was his own testimony, which was contradicted by two treating physicians, his foreman, the director of employment relations, medical records of the employer, and a claim for nonoccupational insurance benefits. No other witness gave any evidence in that case which supported the claimant's position that an industrial accident caused his injury.

In our case we do not consider Dr. Smith's testimony to be unsupportive of Phillips' claim. Although there is no indication that Dr. Smith was ever informed of the subsequent injury, his note dated March 16, 1976, quoted earlier in this opinion, specifically refers to X rays taken March 25, 1975, which was subsequent to the first injury but prior to the second injury. He concludes in that note that Phillips' condition was present at that time. The Industrial Commission was free to construe the conclusions stated by Dr. Smith in this note in conjunction with his previous medical report of August 8, 1975, which had been introduced before the arbitrator.

In *A. O. Smith Corp. v. Industrial Com.* (1972), 51 Ill. 2d 533, part of a letter by the treating physician was introduced on review before the Commission. It stated: "I

have not changed my opinion concerning the relationship of his subcutaneous disease to the original trauma." (51 Ill. 2d 533, 535.) This court there held that the Industrial Commission was within its province in construing this sentence in light of a previous deposition by the doctor and in choosing between conflicting interpretations. In our opinion, the Industrial Commission could have reasonably interpreted Dr. Smith's letter to mean that the condition of Phillips' shoulder, as diagnosed by him in August 1975, was essentially the same as it had been in March 1975, *before* the second accident. Thus, the letter would not only corroborate Phillips' testimony as to the injury, but also would tend to negate the effect of the accident in May 1975.

The fact that Dr. Coblens found no objective reasons for the claimant's symptoms does not indicate the Commission's award is against the manifest weight of the evidence. In *Meade v. Industrial Com.* (1971), 48 Ill. 2d 215, we held that in compensation cases where there is conflicting medical testimony, it is the function of the Industrial Commission to choose between conflicting views and to determine the facts.

We therefore affirm the judgment of the circuit court of Cook County.

*Judgment affirmed.*