**ALASKA PACIFIC ASSURANCE COMPANY and Perini Arctic Associates, Appellants,**

v.

**Thomas TURNER, Appellee.**

**No. 4304.**

Supreme Court of Alaska.

April 25, 1980.

Charles P. Flynn, Burr, Pease & Kurtz, Inc., Anchorage, for appellants.

Jan Samuel Ostrovsky, Birch, Horton, Bittner & Monroe, Anchorage, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

## OPINION

BURKE, Justice.

This is an appeal by an employer and its insurance carrier from a judgment in favor of an employee, on the latter's claim for benefits under the Alaska Workmen's Compensation Act.[1]

Thomas Turner, appellee, filed a claim for workmen's compensation benefits, alleging that he had been injured in the course of his employment with Perini Arctic Associates. Perini and its insurance carrier, Alaska Pacific Assurance Company, contested Turner's right to compensation, contending that his injury was sustained "while claimant was at home lifting a boat in his back yard," in an incident unrelated to his employment with Perini. The Alaska Workmen's Compensation Board found in favor of the employer and its insurance carrier, and denied Turner's claim. The superior court reversed.

The superior court concluded that there was insufficient evidence to overcome the statutory presumption [2] that Turner's injury was compensable, stating:

> AS 23.30.120 provides a statutory presumption that a workmen's compensation claim is covered, unless there is substantial evidence to the contrary. If the medical testimony is inconclusive, all doubts are resolved in favor of the claimant. *Beauchamp v. Employers Liability*

---

1. AS 23.30.

2. AS 23.30.120 provides:

   *Presumptions.* In a proceeding for the enforcement of a claim for compensation under this chapter it is presumed, in the absence of substantial evidence to the contrary, that
   (1) the claim comes within the provisions of this chapter;

   (2) sufficient notice of the claim has been given;
   (3) the injury was not occasioned solely by the intoxication of the injured employee;
   (4) the injury was not occasioned by the wilful intention of the injured employee to injure or kill himself or another.

*Assurance Corporation*, 477 P.2d 993 (Alaska 1970). The record does not disclose substantial evidence tending to support the conclusion that the work related disability was not a substantial factor causing the injury . . . *See Cook v. Alaska Workmen's Compensation Board*, 476 P.2d 29 (Alaska 1970); *Employers Commercial Union Company v. Libor*, 536 P.2d 129 (Alaska 1975).[3]

Turner was employed by Perini Arctic Associates from May, 1975, to May, 1976. During that period of time he worked "a minimum of twelve hours a day," seven days a week, as a cement truck driver and heavy equipment expediter on the Alaska pipeline project. His duties included, "Pushing, shoving, [and] lifting" heavy equipment, "loading it on the truck, [and] unloading it."

Turner testified before the Board that in September, 1975, he began to experience pain in his right leg, which the camp medics diagnosed as "a muscle problem, . . . a charley-horse more or less." He was given Ben-Gay to rub on the leg, but that failed to alleviate the pain, which continued to plague him until December, 1975.

From December 4, 1975, to January 20, 1976, during a job-site shutdown, Turner remained at home where the pain in his leg subsided. When he resumed work, however, the pain grew progressively worse. He testified that on May 9, 1976, he volunteered for a "reduction in force" lay-off because he felt that he was unable to continue to perform his job, stating: "The physical exertion was too demanding. I couldn't continue at that time." He describes the events thereafter as follows:

[T]he back stopped hurting so much but the leg continued to be cramped. It was just a continual pain I was living with

and it finally got to the point where my wife kept after me to go see a doctor. For some strange reason I wouldn't but I finally went to see the doctor and he put me directly into the hospital.

Turner's visit to the doctor was apparently triggered by an incident that occurred on July 17, 1976. On that date, he experienced sharp pain in his back after lifting the tongue of a boat trailer. On July 22, 1976, he consulted Dr. Michael Newman at the Alaska Clinic, who ordered him immediately hospitalized and placed in traction. After more conservative treatment failed, a laminectomy was performed on August 12, 1976. Dr. Newman's diagnosis was that Turner had suffered a herniated intervertebral disc.

Dr. Newman testified that in his opinion Turner was first injured in the course of his employment with Perini; that the pain he experienced after lifting the boat trailer was part and parcel of the same injury, stating:

I think that Tom's history is very sensible for a recurrent disc protrusion. The way he explained it to me, he was driving a truck up on the slope when he developed this acute back pain which radiated to his right leg, which is classical for a disc protrusion. He said he took off work at that time, and the—the pain gradually subsided and he was left symptom free, which is perfectly natural in the history of disc protrusions. Then he was apparently doing some very trivial lifting. He was lifting the tongue of a trailer—a boat trailer which requires probably less than thirty pounds to lift it up,[4] and he has a recurrent protrusion. I think that this is related definitely to his first protrusion, and that it's essentially one injury.

---

**3.** The superior court, in reversing the Board's decision, remanded the case "to determine if notice of injury was sufficient under AS 23.30.-100 and AS 23.30.120(2) . . . and if so, the proper amount of compensation to be awarded." Under our holding in *City & Borough of Juneau v. Thibodeau*, 595 P.2d 626 (Alaska 1979), there was, therefore, not a final, appealable judgment. Since the briefing in this case was completed before our decision in *Thi-*

*bodeau* was announced, we have elected to treat the appeal as a petition for review.

**4.** Although Dr. Newman's notes contained a reference to a "heavy boat," Turner testified that the effort required to lift the trailer tongue was minimal. Dr. Newman later described the incident as involving "very trivial lifting." There was no other evidence to the contrary.

Dr. Newman further explained the mechanics of Turner's injury as follows:

[H]e probably had a tear in the anulus at the time of the first injury with the protrusion of some disc material. This disc material becomes desiccated, loses fluid and shrinks. The enflammatory response to the protruded disc subsides, and in some cases, the disc material actually goes back into the disc space. This relieves the pain but the hole through which the disc material protrudes, or the hernia, still exists. Some new material started to protrude about six weeks prior to when he came to see me. When he began to have backaches and vague—vague, dull pain in the back. Then through the triggering mechanism of lifting the tongue of the trailer, a bigger piece or more material, came through that hole and started pushing on the nerve root causing a recurrence of his symptoms. That's how I put it together from—based on what he told me.

Turner's account of the events leading to his visit to Dr. Newman were corroborated in part, by the testimony of his wife and that of his camp supervisor, Robert Terry.

Mrs. Turner testified that before he went to work for Perini her husband's health was excellent and that he had no complaints of pain. When he returned home in December, 1975, he complained that his leg was bothering him, but said that it seemed to get better while he was not working.

In an affidavit filed with the Workmen's Compensation Board on March 3, 1977, Robert Terry stated that, while he was working for Perini, Turner complained to him of pain in his leg and advised him that he had consulted the camp medics. Turner, on one occasion, also informed him that he had fallen under his truck and injured his back. Terry's affidavit described his observations thereafter as follows:

After that he had a very noticeable limp. After that incident, on several occasions, I noticed Mr. Turner had difficulty getting into the truck and had to pull him-

self in by his hands. Turner notified me of this accident and I believe that the accident was work related . . . . In May of 1976 . . . Mr. Turner told me his leg was hurting him so badly that he felt he had to go to town. There is no question in my mind that Tom Turner took a reduction in force only because of his leg problem.[5]

The Board's ultimate conclusion was as follows:

Our finding, based on the whole of the evidence before us, is that the trailer tongue lifting incident is the event which caused applicant's disability. It did not arise out of or in the course of applicant's employment for the defendant [Perini]; therefore it is not compensable.

Like the superior court, we think the Board erred in reaching this conclusion.

It is undisputed that the trailer lifting incident was the immediate cause of Turner's hospitalization. However, this court has previously held that if an "earlier compensable injury is a substantial factor contributing to the later injury, then the later injury is compensable." *Cook v. Alaska Workmen's Compensation Board*, 476 P.2d 29, 35 (Alaska 1970). *See also* 1 A. Larson, The Law of Workmen's Compensation § 13.11, at 348 (1978).

Apparently the Board concluded that Turner either suffered no injury while working for Perini or that, if he did, such injury was not a substantial factor contributing to the later injury. In essence, the Board chose to disbelieve Turner's account of the onset of his symptoms and rejected Dr. Newman's evaluation of his injuries. The Board emphasized Turner's failure to seek medical attention until after the trailer lifting incident, and his failure to mention any back or leg pain while visiting a medical clinic for a skin problem in January, 1976. Relying on Dr. Newman's notes, which were later related by him in his testimony, the Board further emphasized what it perceived as conflicts in the medical his-

---

**5.** The Board was advised that appellants' attorney had agreed that Terry's affidavit could be considered as evidence and that he waived his right of cross-examination.

tory Turner purportedly gave to Dr. Newman.[6] Based on this evidence, the Board concluded that Turner's disability resulted entirely from the trailer lifting incident.

Seemingly ignored by the Board was the testimony of Turner's camp supervisor, Robert Terry, which strongly supported Turner's own testimony, and the opinion of his doctor, that his symptoms appeared and worsened while he was working for Perini.[7] We note also that the record contains no medical opinion contrary to the one expressed by Dr. Newman.[8] Apparently no independent medical evaluation of Turner's condition was ever made.[9]

As noted by the superior court, if the medical evidence is inconclusive, all doubts are to be resolved in favor of the claimant. *Beauchamp v. Employer's Liability Assurance Corporation*, 477 P.2d 993 (Alaska 1970). With this principle in mind,

and under our holding in *Cook v. Alaska Workmen's Compensation Board*, 476 P.2d 29 (Alaska 1970), we believe the record in this case contains no substantial evidence that Turner's injury did not arise out of his employment with Perini. Therefore, the presumption that his injury came within the coverage of the Workmen's Compensation Act controls.

AFFIRMED.

---

**6.** Dr. Newman's original examination and treatment notes made no reference to the work-related incident indicating that Turner's injury arose from a long history of back problems with the boat lifting its immediate cause. Only later did Dr. Newman make note of Turner's work-related injury as a cause of pain. The Board pointed to this and other variations in Dr. Newman's testimony to support its conclusion after summarizing parts of his testimony:

> We have gone into some detail concerning the doctor's testimony because it is conflicting and indicates to us a change, if not a reversal, of the witness' testimony subsequent to the controversion of applicant's claim by the carrier.

Dr. Newman later testified that it was his opinion that Turner's truck driving caused the acute disc protrusion. He stated that the lifting of the boat trailer was only the triggering of the acute attack that sent Turner to the hospital. As to a prior history of backaches, he concluded that they probably had no relationship to the present problem. As to the lack of reference to a work-related incident in the initial report, Newman stated that Turner had informed him of the incident initially and that his failure to note it in his report was a mere oversight. He stated that he thought it was mentioned in the hospital records. Such records were never presented and his explanation remained undisputed. As to the series of events—an initial acute disc protrusion, followed by a recovery and symptom free period, then a subsequent acute attack after a minor strain—Newman noted that this symptom complex is "classical."

**7.** No mention of this witness' testimony is made in the Board's summary of the evidence or the findings of fact contained in its written decision.

**8.** Had there been differing medical opinions, there might have been substantial evidence to support the Board's conclusion that the presumption of compensability had been rebutted and that Turner's injury was not work-related. *See Miller v. ITT Arctic Services*, 577 P.2d 1044 (Alaska 1978). Where there is conflicting testimony, it is for the Board, who views the witnesses, to decide who to believe and who not to believe. *Id.* at 1049. But that is not the situation in the case at bar. The only medical testimony presented to the Board, that of Dr. Newman, was that the injury was work-related. Although Dr. Newman's reliability as a witness was somewhat undercut by certain prior inconsistencies, his explanation as to these was adequate. *See* note 6 *supra*. Given the lack of other competent medical testimony, the state of Dr. Newman's testimony was, at worst, inconclusive, that is: "the substance of [his] testimony [was] in doubt." *Miller v. ITT Arctic Services*, 577 P.2d at 1049. *Cf. Rogers Electric Co. v. Kouba*, 603 P.2d 909 (Alaska 1979).

**9.** The record does indicate that Turner was once requested to see a Dr. Douglas Smith by Perini's insurance carrier. However, Turner was apparently out of town on that date and the examination was never made.