Cecil H. KESSICK, Appellant,

v.

ALYESKA PIPELINE SERVICE COMPANY and Alaska Pacific Assurance Company, Appellees.

No. 4614.

Supreme Court of Alaska.

Oct. 3, 1980.

Millard F. Ingraham, Rice, Hoppner, Ingraham & Brown, Fairbanks, for appellant.

Stephen Cramer, Merdes, Schaible, Staley & DeLisio, Fairbanks, for appellees.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER,* BURKE and MATTHEWS, JJ.

## OPINION

BURKE, Justice.

In this appeal, Cecil H. Kessick, a claimant under the Alaska Worker's Compensation Act,[1] challenges a judgment of the superior court affirming the Worker's Compensation Board's denial of Kessick's claim for temporary total disability compensation.[2] Kessick maintains that the Board's decision was not supported by substantial evidence. We agree and order the decision reversed.

In April 1976, Kessick was employed by Alyeska Pipeline Service Company as a heavy equipment damage appraiser. On April 18, 1976, while examining some equipment at the Franklin Bluffs pipeline camp, Kessick was injured when he slipped and fell on some ice. At first he believed that he had merely bruised his knee. Over the next few days, however, the pain in his leg and lower back increased. He then consulted the camp medic who referred him to the Fairbanks Clinic. At the clinic, Kessick was examined by Dr. Edward Lindig, an orthopedic surgeon. Dr. Lindig originally diagnosed Kessick's injury as an acute lumbosacral strain and a possible herniated lumbar disc. Physical therapy and pain medication were prescribed. The next day, at Kessick's insistence, he was allowed to return to work. Unfortunately, his condition was such that he was unable to carry out his duties and he was forced to stop work and seek further treatment. With Dr. Lindig's encouragement, Kessick sought outside consultation in his hometown of Huntington, West Virginia. While in Huntington, Kessick had surgery for an inguinal hernia and underwent a number of studies, including a myelogram, on his injury. Although the results of the myelogram were negative, thus virtually ruling out the possibility of a ruptured disc, the studies did reveal some weakness in his right leg.

Upon his return to Fairbanks, Kessick was examined by Dr. Mead who diagnosed a femoral nerve stretch injury. Dr. Mead recommended that physical therapy be continued and warned that the healing period would be approximately six to nine months. After further examination, including repeated muscle strength tests, Dr. Lindig concluded that Kessick suffered from a lumboplexus stretch injury and not merely a femoral nerve stretch. He testified that this type of injury is notoriously slow to recover.

From May to early October 1976, Kessick underwent physical therapy three times a week as treatment for his injury. On October 10, 1976, Kessick was involved in an automobile collision in which he suffered further injuries. At the hearing, Kessick insisted that he had injured only his neck and head in the automobile accident. Dr. Lindig testified that Kessick had also injured his back, although only to a minor degree which rapidly subsided to its pre—automobile accident condition. As treatment for his additional injuries, Kessick's physical therapy was increased to six times a week. This additional treatment continued until January 1977. In January, Kessick returned to his three day a week physical therapy schedule.

In early March of 1977, without consulting Dr. Lindig, Kessick flew from Fairbanks to Nunivak Island to participate in a musk ox hunt. Of the five days Kessick spent at the island, he went hunting only one. He spent most of that day lying on a foam pad in a sled which was towed by a snow machine. He estimated that he walked no more than a total of 150–200 yards the entire day.

Alyeska's compensation carrier, Alaska Pacific Assurance Company (hereinafter "ALPAC"), paid Kessick's medical expenses and total temporary disability benefits until

---

* This case was submitted to the court for decision prior to Justice Boochever's resignation.

1. AS 23.30.005–.270.

2. AS 23.30.155.

April 21, 1977. These payments were then halted because of ALPAC's inability to reconcile Dr. Lindig's reports of continued temporary disability with Kessick's hunting trip and ALPAC's belief that the injuries sustained in the October automobile accident were the cause of the disability. On May 31, 1977, Kessick filed an application for an adjustment of his claim, contending that he was still suffering temporary total disability as a result of his April 18, 1976, fall. A hearing was held before the Alaska Worker's Compensation Board in Fairbanks on August 2, 1977. On January 25, 1978, the Board denied Kessick's claim on the grounds that he was no longer suffering any disability as a result of the April 1976 fall. Kessick appealed to the superior court which affirmed the Board's decision on March 22, 1979. This appeal followed.

In reviewing the findings of the Worker's Compensation Board, the question before this court is whether or not the findings are supported by substantial evidence. *Ketchikan Gateway Borough v. Saling*, 604 P.2d 590, 593 n.8 (Alaska 1979). "Substantial evidence is such relevant evidence as a reasonable mind would accept as adequate to support a given conclusion." *Id.* That the Board's decision reflects only one of several possible inferences which could be drawn from the facts is not important; it is not the function of this court to reweigh the evidence but only to determine whether such evidence exists. *Laborer's & Hod Carriers, Local 341 v. Groothuis*, 494 P.2d 808, 811–12 (Alaska 1972); *Wilson v. Erickson*, 477 P.2d 998, 1002 (Alaska 1970).

The evidence before the Board consisted of Kessick's medical records and the testimony of Kessick and his treating physician, Dr. Lindig. Kessick testified that since his April 1976 fall he has suffered pain from his right knee to the base of his spine and that his leg is so weak that it occasionally gives out from under him. Dr. Lindig testified that, as a result of the April 18, 1976 accident,[3] Kessick suffered a lumbosacral plexus stretch injury which has resulted in persistent motor weakness in his right leg. Improvement had been gradual and steady but very slow over the past year. He further stressed that Kessick's case is "not considered medically stationary for ratings purposes yet. It is anticipated that it will still improve."

Despite this testimony, the Board concluded that "as of April 29, 1977, [Kessick] had returned to his pre–April 18, 1976, injury status." In making this determination the Board relied on the following factors: (1) The Board believed that Kessick was exaggerating his claim[4] and that Dr. Lindig's diagnosis and treatment was based

3. Prior to testifying, Dr. Lindig was apparently unaware that Kessick had sought treatment for similar pains just three weeks prior to his fall. However, upon being informed of this prior injury and after examining the notes of the doctor who had treated Kessick, Dr. Lindig reiterated his belief that Kessick's current injury resulted solely from his April 1976 fall. Nevertheless, the Board chose to disregard Dr. Lindig's uncontradicted testimony and found that the April 1976 fall had aggravated a pre-existing condition. Whether Kessick's fall was the sole cause of his injury or merely aggravated a pre-existing condition is not of crucial importance. In either event, the resulting injury is clearly compensable. *See, e. g., Hawkins v. Green Assoc'd*, 559 P.2d 118, 119 (Alaska 1977); *Thornton v. Alaska Workmen's Comp. Bd.*, 411 P.2d 209, 210 (Alaska 1966). We do note, however, that in the absence of any competent contradictory medical evidence the Board's decision to disregard Dr. Lindig's testimony is inconsistent with the principle that inconclusive medical testimony is to be re-

solved in favor of the claimant. See discussion in the text *infra*.

4. This belief is based on two instances of apparently false testimony and Kessick's failure to consult with Dr. Lindig prior to engaging in the musk ox hunt. Although we have serious doubts about the propriety of disbelieving Kessick's testimony merely because he failed to consult his physician prior to engaging in a non-strenuous musk ox hunt, an activity which Dr. Lindig testified would have no adverse medical effects, we nevertheless feel that the decision was well within the Board's discretion as the trier of fact. It is well-settled that where a claimant testifies falsely in one instance the trier of fact may elect to disregard his otherwise uncontradicted testimony. *Highway and City Transportation, Inc. v. Industrial Comm'n*, 71 Ill.2d 297, 302, 16 Ill.Dec. 452, 454, 375 N.E.2d 83, 85 (1978); 3 A. Larson, Workmen's Compensation Law § 80.20, at 15–396–399 (1976).

on this exaggeration; (2) Kessick's medical records disclosed that all objective testing, including a myelogram and electromyography, had been negative; (3) his right knee jerk, which he had lost as a result of his fall, had returned by October 29, 1976; (4) as of April 29, 1977, there was no longer any atrophy in his right leg; and (5) on July 27, 1976, Dr. Mead had estimated a recovery period of six to nine months. After a review of the record, we are unable to accept these factors as "substantial evidence" in support of the Board's conclusion that Kessick no longer suffered any ill-effects from his April 1976 fall.

The Board's decision to disregard Dr. Lindig's uncontradicted testimony is inconsistent with the general principle that any doubts concerning inconclusive medical testimony are to be resolved in favor of the claimant. *See, e. g., Miller v. ITT Arctic Services,* 577 P.2d 1044, 1049 (Alaska 1978); *Beauchamp v. Employees Liability Assurance Co.,* 477 P.2d 993, 996–97 (Alaska 1970). Where there is a conflict in testimony, it is undeniably the province of the Board and not this court to decide who to believe and who to distrust. *Alaska Pacific Assurance Co. v. Turner,* 611 P.2d 12, at 15 n.8 (Alaska 1980). But, as in *Turner,* that is not the situation presented by the case at bar. The only medical testimony presented to the Board, that of Dr. Lindig, was that Kessick was still temporarily disabled. Although the credibility of Dr. Lindig's diagnosis was questioned by the Board,[5] no contradictory medical evidence was presented. Given this lack of other competent medical evidence, the state of Dr. Lindig's testimony was, at worst, inconclusive. *Id.* Any doubts regarding this testimony should therefore have been resolved in Kessick's favor.

Nor does the lack of objective signs of an injury in and of itself preclude the existence of such an injury. *See Rogers Electric Co. v. Kouba,* 603 P.2d 909, 911 (Alaska 1979). There are many types of injuries which are not readily disclosed by objective tests.

The Board's findings that Kessick's right knee jerk had returned and that there was no longer any atrophy in his right leg are also unpersuasive. Although these facts do indicate that Kessick was recovering, we believe that no reasonable person would infer that the effects of Kessick's injury had totally subsided, particularly in light of Dr. Lindig's testimony.

Finally, we believe that the Board's reliance on Dr. Mead's estimate of a six to nine recovery period is misplaced. First, we do not believe that a reasonable person would accept as conclusive a nine–month old prediction that recovery would take approximately six to nine months when a subsequent diagnosis indicates that the patient has not yet recovered. Second, we note that Dr. Mead's estimate was based on his belief that Kessick was suffering from a femoral nerve stretch and not the lumbosacral plexus stretch injury which Dr. Lindig ultimately diagnosed.

Having determined that the Board failed to resolve inconclusive medical testimony in favor of the claimant and that the record contains no other substantial evidence in support of the Board's conclusion that Kessick had recovered from his April 1976 fall, we are compelled to reverse.

REVERSED.

BOOCHEVER, J., dissents.

BOOCHEVER, Justice, dissenting.

I believe that there was substantial evidence to support the Alaska Workmen's Compensation Board's finding that after April 29, 1977, Kessick did not suffer any compensable disability from his April 18, 1976, injury. Evidence supporting the finding may be summarized as follows:

> Board was Dr. Lindig's testimony that his diagnosis was based on the notes from the camp medic and the results of repeated clinical examinations, including muscle evaluations by therapists, as well as what Kessick had told him.

---

**5.** The basis for the Board's distrust of Dr. Lindig's testimony was its belief that his diagnosis was based solely on Kessick's claims of pain and weakness, claims which the Board felt were exaggerated. Seemingly ignored by the

1. All objective testing was negative. Thus, determination of disability was based on subjective complaints.

2. As of April 29, 1977, there was no atrophy of Kessick's right leg. Kessick's complaint was that he had pain ascending from his knee to his spine and that his right leg was weak.

3. Kessick had prior back difficulties.

4. Kessick exaggerated his claim by denying his previous back difficulties, although when confronted with Fairbanks Clinic records he admitted he was receiving treatment for his back the month before his accident, in March, 1976.

5. When originally treated for an inguinal hernia in West Virginia, he attempted to attribute it to his April, 1976, fall, although that claim was later withdrawn.

6. In October, 1976, he was involved in a rear-end automobile collision. He claimed that only his head and neck were injured without involvement of the low back. Dr. Lindig indicated that there was some injury to the low back.

7. On March 1, 1977, Kessick, without consulting his doctor, went on a musk ox hunt at Nunivak Island. He injured his right shoulder when the sled on which he was riding tipped over.

8. Dr. Lindig's report of Kessick's condition on April 29, 1977, was very similar to Dr. Berrick's report of March 29, 1976, prior to the accident, indicating that any aggravation of Kessick's prior back and leg disability had terminated.

It is true that the employer did not submit medical expert testimony, but this is not a case involving "highly technical medical considerations" such as those pertaining to the cause of renal failure at issue in *Commercial Union Companies v. Smallwood*, 550 P.2d 1261, 1267 (Alaska 1976) (footnote omitted), where we stated:

> While valid awards can stand in the absence of definite medical diagnosis, this would appear to be the type of case in

which it is impossible to form a judgment on the relation of the employment to the disability without medical analysis.

The medical analysis here depended almost entirely on evaluating the history furnished by Kessick and his subjective complaints. This is the type of evidence in which a compensation board has considerable expertise, as summarized by Professor Larson:[1]

> In line with the general tendency of administrative law to recognize the expertise of specialized tribunals, compensation boards may rely to a considerable extent on their own knowledge and experience in uncomplicated medical matters, and in such cases awards may be upheld without medical testimony or even in defiance of the only medical testimony.

Here, the Board was in the best position to evaluate the evidence. I would affirm.

---

1. 3 A. Larson, Workmen's Compensation Law § 79 at 15 210 (1976). *See also Beauchamp v. Employers Liability Assurance Corp.*, 477 P.2d 993 (Alaska 1970), where we upheld an award although it was not supported by clear medical evidence.