**Eileen Marie MILLER, wife, Michael Paul Miller, son, and Valerie Ann Merriman, stepchild of David Eugene Miller (Deceased), Appellants,**

v.

**ITT ARCTIC SERVICES, Liberty Mutual Insurance Company, and Alaska Pacific Assurance Company, Appellees.**

**ITT ARCTIC SERVICES, Liberty Mutual Insurance Company, and Alaska Pacific Assurance Company, Cross-Appellants,**

v.

**Eileen Marie MILLER, wife, Michael Paul Miller, son, and Valerie Ann Merriman, stepchild of David Eugene Miller (Deceased), Cross-Appellee.**

Nos. 3311 and 3312.

Supreme Court of Alaska.

April 21, 1978.

Robert N. Opland, Opland, Johnston & Arnett, Anchorage, for appellants.

Robert L. Eastaugh, Delaney, Wiles, Moore, Hayes & Reitman, Inc. and Michael G. Briggs, Ely, Guess & Rudd, Anchorage, for appellees.

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR, BURKE and MATTHEWS, Justices.

## OPINION

RABINOWITZ, Justice.

This appeal arises out of the denial of benefits to the survivors of David Eugene Miller by the Alaska Workmen's Compensation Board. The superior court upheld the Board's determination. We affirm.

David E. Miller collapsed on January 20, 1975, while employed by ITT Arctic Services on a project at Fort Wainwright near Fairbanks; he died at a nearby hospital within one and one-half hours of being stricken. Miller had been making "cross connections" for communications circuitry on the third floor of a building. Although testimony of witnesses before the Board is not entirely in agreement regarding details of the day's work, it appears that Miller had been doing primarily fine hand work for nine or ten hours—making electrical connections and wrapping the wires around terminals with an electric "gun" weighing a pound or less. No heavy lifting or other vigorous exertion was involved. At about 5:15 p. m., the crew cleaned up the area, carried tools or other items down the 44 steps of the building, and loaded them into a pickup truck. One of Miller's co-workers testified that Miller made two or three trips down the stairs with boxes of equipment and materials and that Miller last carried a box of spare iron parts from the "cable rack." The "nonworking foreman" for the job testified that Miller made only one trip from the third floor to the pickup—carrying his toolbox weighing 30–35 pounds. Miller lifted the box onto the tailgate of the pickup and immediately slumped over the box. He was carried back inside the building by the other members of the crew and subsequently was taken by ambulance to Bassett Army Hospital at Fort Wainwright where he died.

Miller's widow, son and stepdaughter filed a claim for workmen's compensation benefits, and a hearing was held before the Alaska Workmen's Compensation Board.[1] The Board concluded that Miller's death was due to intracerebral bleeding—the direct result of a ruptured berry aneurysm in his brain. The Board determined that although Miller was in the course of his employment when the aneurysm ruptured, the rupture was not caused by his employment. The Board heard lay and expert testimony which it determined was sufficient to overcome Alaska's statutory presumption of compensability. The Board concluded that, once the presumption had disappeared, the applicants failed to bear their burden of showing a connection between Miller's death and his employment.

In deciding that the presumption of compensability had been rebutted, the Board relied upon testimony of Miller's co-worker and foreman that the work performed by

---

1. The hearing before the Alaska Workmen's Compensation Board was held February 5, 1976. The Board's decision and order were dated June 11, 1976.

Miller on the day of his death required virtually no physical exertion and that the only exertion immediately prior to his attack was carrying a tool box downstairs. In addition, the Board viewed the medical evidence as indicating "that aneurysms rupture spontaneously and at random times around the clock."

Miller's survivors appealed the decision of the Alaska Workmen's Compensation Board, and the superior court affirmed.[2] This appeal followed.[3]

Miller's survivors contend that the statutory presumption of compensability was not overcome because no substantial evidence was introduced to show that Miller's death was not work-connected. They also argue for application of the rule that doubts as to the substance of medical testimony must be resolved in favor of claimants; and with respect to testimony in the case at bar, this rule requires the conclusion that no substantial evidence was introduced to overcome the presumption of compensability.

The Alaska Workmen's Compensation Act contains a presumption that an injury is work-connected in the absence of substantial evidence to the contrary.[4] Once

substantial evidence is introduced, the presumption drops out and the burden of proving all elements of the claim falls on the claimant.[5] This court has consistently defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[6] Evidence which is competent or admissible may nevertheless be insufficient to overcome the presumption of compensability; the question whether the quantum of evidence is substantial is a legal question.[7]

In *Fireman's Fund American Insurance Cos. v. Gomes*, 544 P.2d 1013 (Alaska 1976) (unexplained murder of bartender at his place of employment), we explained two possible ways of overcoming the presumption of compensability: (1) by affirmative evidence showing that the death was not work-connected, or (2) by eliminating all reasonable possibilities that the death was work-connected.[8] In *Gomes*, no affirmative evidence was produced to show that Gomes' death was due to non-work-related causes; nor was the employer able to meet "the infinitely more difficult task of eliminating all reasonable hypotheses that the killing was work-related."[9] In *Gomes*, the evi-

---

**2.** The superior court's memorandum of decision was filed December 9, 1976.

**3.** A notice of cross-appeal originally was filed by ITT Arctic Services, Liberty Mutual Insurance Company and Alaska Pacific Assurance Company. However, they expressly have abandoned their cross-appeals.

**4.** AS 23.30.120(1) provides:
> In a proceeding for the enforcement of a claim for compensation under this chapter it is presumed, in the absence of substantial evidence to the contrary, that
> (1) the claim comes within the provisions of this chapter . . ..
See *Fireman's Fund Am. Ins. Cos. v. Gomes*, 544 P.2d 1013, 1015 (Alaska 1976); *Beauchamp v. Employers Liab. Assurance Corp.*, 477 P.2d 993 (Alaska 1970).

**5.** *Anchorage Roofing Co., Inc. v. Gonzales*, 507 P.2d 501, 504 (Alaska 1973); *see Del Vecchio v. Bowers*, 296 U.S. 280, 286–87, 56 S.Ct. 190, 193, 80 L.Ed. 229, 232–33 (1935).

**6.** *See, e. g., Fireman's Fund Am. Ins. Cos. v. Gomes*, 544 P.2d 1013, 1015 (Alaska 1976); *Anchorage Roofing Co., Inc. v. Gonzales*, 507 P.2d 501, 503 (Alaska 1973); *Thornton v. Alas-*

ka *Workmen's Compensation Bd.*, 411 P.2d 209, 210 (Alaska 1966).

**7.** *Fireman's Fund Am. Ins. Cos. v. Gomes*, 544 P.2d 1013, 1015 & n. 7 (Alaska 1976).
> In the case at bar, appellees argue that any competent affirmative evidence should be sufficient to rebut the presumption of compensability. This court previously has required more than mere competence. The evidence not only must be competent but also must be such that a reasonable mind might accept it as adequate to support a conclusion. *Fireman's Fund Am. Ins. Cos. v. Gomes*, 544 P.2d 1013, 1016 (Alaska 1976). Professor Larson's view is similar:
>> The evidence necessary to overcome the presumption must do more than create doubt or set up noncompensable alternative explanations. . . . [I]t must be 'evidence such as a reasonable mind might accept as adequate to support a conclusion.'
> 1 Larson, Workmen's Compensation Law § 10.-33(b), at 3–128 (1978).

**8.** *Fireman's Fund Am. Ins. Cos. v. Gomes*, 544 P.2d 1013, 1016 (Alaska 1976).

**9.** *Id.*

dence did not answer the question why the employee had been killed; in the absence of affirmative evidence showing non-work-relatedness, we held that substantial evidence to rebut the presumption had not been introduced.

Unlike the situation in *Gomes*, appellees in the case at bar have introduced affirmative evidence in the form of expert testimony that Miller's death was not work-related. The question remains, however, whether the evidence was sufficient to constitute substantial evidence for purposes of rebutting the statutory presumption of compensability.

The adequacy of evidence introduced to overcome the statutory presumption was addressed by this court in *Employers Commercial Union Co. v. Libor*, 536 P.2d 129 (Alaska 1975). In *Libor*, the Board had awarded compensation based upon its conclusion that a work-related back injury was the cause of a subsequently discovered herniated disc. We upheld the award and concluded that substantial evidence against the presumption of compensability had not been produced even though one of the two medical experts testified that the initial injury could not, with a reasonable degree of medical certainty, be said to be the cause of the condition for which the claimant sought compensation. However, the witness gave no opinion that the subsequent disability was not work-related. Under those circumstances, we held that the presumption of compensability had not been overcome. The mere inability to state that the disability was work-related did not constitute substantial evidence.[10]

*Thornton v. Alaska Workmen's Compensation Board*, 411 P.2d 209 (Alaska 1966), also presented the question whether the presumption of compensability had been overcome by substantial evidence that the employee's death was not work-related. We concluded, in part, that the presumption had not been overcome because neither of the two medical witnesses testified that the employee's exertion had not contributed to his death.

In the case at bar, three physicians testified as to the cause of Miller's death. All three agreed that a ruptured berry aneurysm was the most likely cause of death.[11] However, the three doctors differed as to the connection between Miller's work activity and the subsequent intracerebral bleeding.

Dr. Partnow, the physician who treated Miller in the hospital emergency room, stated that causes of ruptured berry aneurysms are not well understood. He explained that such aneurysms are statistically more likely to rupture during periods of activity than during periods of repose, but he also noted that people are active for the largest proportion of each day. In Dr. Partnow's opinion, the rupture of a berry aneurysm might be caused by an increase in intracerebral blood pressure due to physical straining; loading a box on the back of a pickup truck was the kind of activity which would result in a noticeable increase in blood pressure. However, he declined to state categorically whether the rupture was related to physical activity:

> I think that it is something that would have happened anyhow. The concept of somebody walking around with a time bomb in his head appeals to me. Had it not happened then it probably would have happened at another time, again more liable to be associated with physical activity, but certainly not inevitably associated with it.

*Anchorage Roofing Co., Inc. v. Gonzales*, 507 P.2d 501, 505–06 (Alaska 1973); *Beauchamp v. Employers Liab. Assurance Corp.*, 477 P.2d 993 (Alaska 1970).

10. In *Libor*, we concluded that the Board properly could have relied upon the presumption of AS 23.30.130(1); but even in the absence of the presumption, the Board's award would have been adequately supported by the record.

Several other opinions of this court which consider the presumption of compensability are also useful in evaluating the amount of evidence necessary to be substantial. *See, e. g.,*

11. Dr. Partnow and Dr. Wilson agreed that whether Miller's death resulted from aneurysm rupture could have been established with certainty by an autopsy. However, no autopsy was performed.

Dr. Mead agreed that causes of rupture in aneurysms are not entirely understood. He testified that, based upon his observations, 20 to 40 per cent of such ruptures are associated with exertion. Dr. Mead also noted greater incidence of rupturing when blood pressure is elevated and stated that physical exertion causes an increase in blood pressure. In addition, he specifically concluded that Miller's death was related to the exertion associated with Miller's work. However, Dr. Mead refused to say that the rupture could have been avoided if Miller had not lifted the box into the truck at that moment; that is, a similar or greater strain at a time in the foreseeable future was likely to have caused the aneurysm to rupture. He further agreed with appellee's counsel that a certain degree of inevitability was involved and that risk of rupture was present whether affected persons were involved in day-to-day activities or were at rest. Dr. Mead acknowledged that statistical correlations between physical activity and aneurysm rupture may be affected by relative proportions of time spent asleep and awake.

The third medical expert, Dr. Wilson, stated, "[I]t's only the occasional case where it seems that the specific act of physical activity immediately preceded the bleed. . . . Most of these occur . . . at random . . . with respect to activity." Dr. Wilson also stated that ordinary physical activity does not increase blood pressure—although "an enormously heavy amount of lifting . . . might make the blood pressure go up a little bit." He stated that a single act of lifting a moderately heavy tool box would not alter blood pressure at all. Although Dr. Wilson agreed with the claimant's counsel on cross-examination that no absolutes exist "in this thing," he stated categorically that no rela-

tion existed between Miller's effort and the apparent rupture:

> It's my opinion that it had nothing whatsoever to do with it, based on all I know from personal and vicarious experiences through reading and so forth about this disease which we think he had.

 The instant case differs from *Libor* and *Thornton* because Dr. Wilson expressly stated that in his opinion Miller's exertion at work "had nothing whatsoever to do with" Miller's death. His opinion was based upon accurate and complete information concerning the circumstances surrounding Miller's death. Nor was Dr. Wilson's expertise or the reliability of his testimony undercut by the testimony of other experts or by cross-examination. Under such circumstances, we conclude that substantial evidence—which a reasonable mind might find adequate to support a conclusion that Miller's death was not related to his employment—had been introduced and that the presumption of compensability was overcome. In the absence of the presumption, the claimants must prove all elements necessary to establish the claim.

Appellants also argue that the presumption should be sustained because the experts' testimony indicates uncertainty among the medical profession as to the causes of aneurysm rupture. They contend that the rule resolving doubts as to the substance of medical testimony in favor of claimants requires resolving uncertainty in medical evidence in favor of Miller's survivors and, accordingly, no substantial evidence exists to rebut the presumption.

 On several occasions we have stated that any doubt as to the substance of medical testimony should be resolved in favor of the claimant.[12] Miller's survivors apparent-

---

12. *See Fireman's Fund Am. Ins. Cos. v. Gomes*, 544 P.2d 1013, 1017 n. 13 (Alaska 1976); *Beauchamp v. Employers Liab. Assurance Corp.*, 477 P.2d 993, 997 n. 12 (Alaska 1970); *Thornton v. Alaska Workmen's Compensation Bd.*, 411 P.2d 209, 211 (Alaska 1966); *see also Employers Commercial Union Co. v. Libor*, 536 P.2d 129, 131 (Alaska 1975). Federal courts considering cases arising under the Longshore-

men's and Harbor Workers' Compensation Act—the model for Alaska's Workmen's Compensation Act—have utilized a similar rule. *See, e. g., In re District of Columbia Workmen's Compensation Act*, 180 U.S.App.D.C. 216, 222–226, 554 F.2d 1075, 1081–85, *cert. denied, sub nom. J. Frank Kelly, Inc. v. Swinton*, 429 U.S. 820, 97 S.Ct. 67, 50 L.Ed.2d 81 (1976); *Mitchell v. Woodworth*, 146 U.S.App.

ly would have us apply the rule whenever the evidence reveals lack of unanimity or shows uncertainty among medical experts about ultimate causation. We are not persuaded that the rule should be applied in such a manner. In *Thornton v. Alaska Workmen's Compensation Board*, 411 P.2d 209, 211 (Alaska 1966), we noted that doubts should be resolved in favor of the claimant "if there were any doubt as to what the substance of the medical testimony was." In *Thornton*, we did not rely upon the rule because the substance of neither physician's testimony was in doubt. We believe the *Thornton* approach is correct and the rule is properly applicable only when the substance of a particular witness' testimony is in doubt. In such circumstances, any doubt should be resolved in favor of the claimant. To extend the rule beyond the testimony of individual witnesses would unduly interfere with the Board's fact finding function. This we decline to do. We believe the presumption of compensability and the showing of substantial evidence necessary to overcome it adequately protect the humanitarian purposes of the Workmen's Compensation Act.

In the case at bar, Dr. Wilson's testimony that Miller's death was unrelated to his employment cannot be characterized as doubtful or ambiguous. Since the substance of Dr. Wilson's testimony was not in doubt, there was no need for the Board to resolve any questions regarding its content. The Board properly declined to apply the rule to the medical testimony before it.

Although we have concluded that the employer introduced substantial evidence to overcome the presumption of compensability, the question remains whether the Board's denial of workmen's compensation benefits to Miller's widow and children was correct. In reviewing a determination of the Alaska Workmen's Compensation Board, the applicable standard of review is again the substantial evidence test.[13] That is, the reviewing court may not reweigh the evidence or draw its own inferences from the evidence.[14] If, in light of the record as a whole, there is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, then the order of the Workmen's Compensation Board must be upheld.[15]

■ Since the statutory presumption of compensability has been overcome, it is the applicants' burden to prove all elements necessary to support their claim. The Board considered both testimony of medical experts and testimony of Miller's co-workers and determined that the applicants had failed to show a work-connection. We have carefully reviewed the entire record and have concluded that the same evidence introduced to rebut the presumption of compensability is also adequate to support the Board's decision. Even if the substance of testimony given by Dr. Partnow and Dr. Mead is viewed as being in doubt—such that it should be resolved in favor of Miller's widow and children—substantial evidence remains upon which the Board could reasonably have based its conclusion. The evidence well might support a different decision by the Board; indeed, the cases cited in appellants' brief illustrate the diverse positions taken by workmen's compensation boards and courts in cases where employees have died as a result of aneurysm rupture. However, as a reviewing court, we may not reweigh the evidence or draw our own inferences from it.

Affirmed.

D.C. 21, 23, 449 F.2d 1097, 1099 (1971); *Wheatley v. Adler*, 132 U.S.App.D.C. 177, 183–184, 407 F.2d 307, 313–14 (1968); *J. V. Vozzolo, Inc. v. Britton*, 126 U.S.App.D.C. 259, 262, 377 F.2d 144, 147 (1967); *Vinson v. Einbinder*, 113 U.S. App.D.C. 246, 256, 307 F.2d 387, 388 (1962), *cert. denied*, 372 U.S. 934, 83 S.Ct. 880, 9 L.Ed.2d 765 (1963).

13. *See, e. g., Hawkins v. Green Associated*, 559 P.2d 118, 120 (Alaska 1977); *Beauchamp v.*

*Employers Liab. Assurance Corp.*, 477 P.2d 993, 994–97 (Alaska 1970).

14. *Hawkins v. Green Associated*, 559 P.2d 118, 120 (Alaska 1977); *Beauchamp v. Employers Liab. Assurance Corp.*, 477 P.2d 993, 997 (Alaska 1970).

15. *Beauchamp v. Employers Liab. Assurance Corp.*, 477 P.2d 993, 994 (Alaska 1970); *Cook v. Alaska Workmen's Compensation Bd.*, 476 P.2d 29, 32 (Alaska 1970).