**Fred HAGEL, Appellant,**

v.

**KING STEEL, INC. and Industrial Indemnity Company of Alaska, Appellees.**

Nos. 3553, S–3206.

Supreme Court of Alaska.

Feb. 2, 1990.

Michael A. Stepovich, Stepovich, Kennelly & Stepovich, Fairbanks, for appellant.

Timothy M. Stone, Alexander K.M. Vasauskas, Stone, Waller & Jenicek, Anchorage, for appellees.

Before MATTHEWS, C.J., and RABINOWITZ BURKE, COMPTON and MOORE, JJ.

OPINION

PER CURIAM.

The issue on appeal is whether the superior court erred in affirming a factual determination made by the Workers' Compensation Board that Fred A. Hagel did not sustain a new injury or aggravate a pre-existing injury while working for King Steel, Inc. We conclude that the Workers' Compensation Board's findings of fact and conclusions of law are supported by "substantial evidence in light of the whole record," *Bailey v. Litwin Corp.*, 713 P.2d 249, 252 (Alaska 1986), for the reasons expressed in the opinion of the superior court appended hereto. We therefore affirm.

AFFIRMED.

APPENDIX

In the Superior Court for the State of Alaska

Fourth Judicial District

Case No. 4FA–87–1814 Civil

Fred Hagel, Appellant,

vs.

King Steel, Inc. and Industrial Indemnity Insurance Company, Appellees.

OPINION

Appellant, Fred A. Hagel, appeals from a decision of the Workers' Compensation Board ("Board") rejecting his claim for temporary total disability benefits arising from an alleged injury to his back suffered on June 6, 1986. Hagel, a journeyman iron worker with Ironworker's Local 751, injured his back in 1982 while working for Storch/Reid–Strutt Alaska. He reported his injury and filed a claim for Workers' Compensation. When Hagel became medically stationary in March of 1984, he was released to light-duty work and given a 30% impairment by his treating physician, Dr. Lindig. Dr. Lindig advised Hagel not to return to iron working. The Board approved a Compromise and Release in November 1985.

Hagel returned to iron working during March of 1986 with Bush Architectural

Erectors, Inc., affixing metal sheets to a building structure. The work involved lifting and moving the sheets, but Hagel suffered no injury other than general body muscle soreness. He completed this work in May 1986.

On June 5, 1986, Hagel began work for defendant King Steel. Hagel testified to the Board that on the morning of June 6, 1986, he slipped from a loose "plumbers insert" jutting from the side of a fountain on which he was working, fell between 18 and 24 inches and landed on his feet in such a way as to jar his back. There were no witnesses. Hagel testified that he suffered shooting pains up his back at the time, but hoped that he would recover quickly. He reported the fall to his union steward, but failed to report it to his foreman. The afternoon of the fall Hagel received a layoff notice from King Steel because the project was completed.

Hagel's back pains continued through the weekend. On Monday morning, June 9, 1986, he was examined by Dr. Lindig, who restricted him from returning to iron work based on his reported symptoms. Hagel then reported to King Steel to file an injury report. Hagel testified that he continued to suffer varying degrees of back pain from June 6, 1986, through the close of the Board hearing.

Hagel continued to seek work and was dispatched by his union to a project with Architectural Building Systems in Anchorage to begin working July 1, 1986. He consulted with Dr. Lindig who released him to try light duty work. Hagel was initially able to handle the work which was light duty. However, as the work progressed to mounting the sheeting, he experienced difficulty. He was laid off on August 6, 1986 for inability to handle the heavy materials. Hagel was re-examined by Dr. Lindig on August 19, 1986, and his back was diagnosed as having returned to pre–June 6, 1986 condition.

On September 8, 1986, Hagel consulted with Dr. Collins in South Dakota concerning his back. After referral for a CAT scan, Dr. Collins diagnosed slight disc herniation at L4–5, thought Hagel unable to return to work, and ordered him to refrain from any strenuous activity for an indefinite period. Hagel subsequently moved to South Dakota, and remained under Dr. Collins' care through the time of the Board hearing.

At King Steel's request, Hagel was examined by Dr. Horton on January 8, 1987. Dr. Horton had previously examined Hagel in March of 1983 concerning his 1982 compensable injury, at which time the doctor found mild bulging of the discs at L3–4, L4–5 and L5–S1. The doctor found exactly the same condition in 1987. Although Hagel evinced considerable pain during the range-of-motion tests in 1987, Dr. Horton found no objective cause for the pain, and concluded that Hagel was attempting to convince him of his discomfort.

On March 9, 1987, Hagel began work as a foreman for a construction project in Duluth, Minnesota. After some weeks on the job he was transferred to another project in that city, where he was no longer a supervisor. He found the work there too heavy and resigned on April 24, 1987. Dr. Collins has never removed Hagel's work restrictions, and was unaware that Hagel had returned to work at all after June 6, 1986.

Hagel argued to the Board that he reinjured his back on June 6, 1986, that the injury was severe enough to prevent him from returning to work he'd proven himself able to do prior to the injury, and that Dr. Collins' restrictions should be interpreted as indicating temporary total disability resulting from a compensable injury.

King Steel argued that there is no objective evidence that the 1986 incident substantially aggravated the pre-existing injury, that Hagel has twice successfully returned to moderate physical labor in his customary occupation, and that Hagel suffers no disability as a result of his work at King Steel.

The Board issued its decision and order denying Hagel compensation on August 21, 1987. The Board found the following:

We find clear, substantial evidence that no physical or vocational impairment or

disability arose from the incident which occurred on June 6, 1986. We find no aggravation, acceleration or combination with Applicant's pre-existing condition so as to be a substantial factor in his present disability. Defendants have come forward with substantial evidence sufficient to overcome the presumption of compensability. Applicant has failed to show by a preponderance of the evidence that he suffered a compensable injury on June 6, 1987. Applicant's claim for disability benefits must be denied.

Hagel appeals from that decision.

Hagel contends that: (1) the Board's failure to award compensation was based on an incorrect legal standard, more specifically, that it misinterpreted the concept of disability in Alaska Workers' Compensation law; and (2) the Board's decision to deny disability compensation was not supported by substantial evidence.

The Board correctly applied the last injurious exposure rule adopted by the Alaska Supreme Court in *Ketchikan Gateway Borough v. Saling,* 604 P.2d 590, 595 (Alaska 1979). Under this rule there are two distinct determinations that must be made: (1) whether employment with King Steel "aggravated, accelerated, or combined with" Hagel's pre-existing condition; and, if so, (2) whether the aggravation, acceleration or combination was a "legal cause" of his disability, i.e., "a substantial factor in bringing about the harm." *Id.* at 596, 598. Unless the Board answers both of the above questions in the affirmative, King Steel is not responsible for Hagel's disability compensation.

Hagel argued to the Board that his fall while working with King Steel aggravated his pre-existing back injuries, which accelerated his disability. Under Alaska's Workers' Compensation Act, such aggravation and acceleration must be presumed in the absence of substantial evidence to the contrary. AS 23.30.120(a)(1); *Burgess Construction Company v. Smallwood,* 623 P.2d 312, 315 (Alaska 1981). Before the presumption of AS 23.30.120(a)(1) attaches, some preliminary link must be es-

tablished between Hagel's disability and his employment with King Steel. The Board found that Hagel established the required preliminary link. Once the preliminary link is established the presumption of compensability attaches and King Steel must come forward with substantial evidence that Hagel's pre-existing injury was not aggravated or accelerated by Hagel's employment with King Steel. *Burgess,* 623 P.2d at 317. "Substantial evidence is such relevant evidence as a reasonable mind would accept as adequate to support the conclusion at issue." *Id.* at 315 (citing *Miller v. ITT Arctic Services,* 577 P.2d 1044, 1046 (Alaska 1978)). The Board found that King Steel came forward with substantial evidence sufficient to overcome the presumption of compensability.

When the presumption of compensability was successfully rebutted, Hagel had the burden of proving all elements of his case by a preponderance of the evidence. *Id.* at 316 (citing *Miller v. ITT Arctic Services,* 577 P.2d at 1046). The Board found that Hagel failed to show by a preponderance of the evidence that he suffered a compensable injury on June 6, 1987.

Hagel argues that the Board incorrectly based its decision on evidence of Hagel's medical impairment and that the Board ignored evidence of Hagel's vocational/economic impairment. After reviewing the Board's decision this court concludes that the Board correctly relied on both medical and vocational/economic factors. It is clear from the Board's opinion that it considered Hagel's wage earning capacity. The Board noted that Hagel continued his work at King Steel in spite of his injury and went on to work at two other jobs in his field, although light duty, and earned wages comparable to his pre-injury wages.

Hagel's reliance on the authority of *Vetter v. Alaska Workmen's Compensation Board,* 524 P.2d 264, 266 (Alaska 1974) and *Ketchikan Gateway Borough v. Saling,* 604 P.2d 590, 594 (Alaska 1979) is misplaced. The issue in *Vetter* was whether disability compensation may be denied to a claimant who does not desire to work after her injury. In *Ketchikan,* the Board ig-

 

nored evidence of the employee's wage earning capacity in determining the extent of the employee's pre-existing disability. The court held that it was an error of law for the Board to ignore the employee's demonstrated earning capacity. In Hagel's case, the Board considered Hagel's wage earning capacity as well as his physical impairment as evidenced by the Opinion:

> Applicant missed no work at King Steel as a result of the alleged injury. He continued to seek work, and went to light-duty work at Architectural Building Systems as soon as it was available; and he did the same with the Jamar Company. He left both jobs when the duties began to require heavy work, work for which Applicant has never been released since his 1982 injury.

> We find clear, substantial evidence that no physical or vocational impairment or disability arose from the incident which occurred on June 6, 1986.

Page 5 of Board's Decision and Order.

This court concludes that the Board in this case applied the correct standard of law. The Board determined that Hagel's employment with King Steel did not aggravate, accelerate or combine with Hagel's pre-existing condition so as to be a substantial factor in his present disability. If this determination is supported by substantial evidence, Hagel's claim for compensation was correctly denied. It is not the function of this court to reweigh the evidence or choose between competing inferences. *Burgess Construction Company v. Smallwood*, 623 P.2d 312, 317 (Alaska 1981). This court is limited to a determination of whether the Board's findings are supported by substantial evidence in light of the whole record. *Id.* Substantial evidence is "evidence that a reasonable mind might accept as adequate to support the Board's conclusion." *Veco, Inc. v. Wolfer*, 693 P.2d 865, 870 (Alaska 1985).

In reaching its findings, the Board considered the testimony of Hagel, Dr. Lindig, Dr. Collins, and Dr. Horton, as well as evidence of Hagel's work history before and after June 6, 1986. Dr. Horton and Dr. Lindig, both of whom examined Hagel prior to the alleged injury and after, found no change in his back condition when they examined him after June 6, 1986. Dr. Lindig testified to the Board that the June 6th incident did not accelerate Hagel's pre-existing condition (Board Transcript, p. 210) and that Hagel's back and neck still carry the same disability rating as they had before the incident. (Board Transcript, p. 214).

Dr. Horton testified by deposition that there was no medical evidence that Hagel actually incurred an injury on June 6, 1986 (Horton's Deposition, p. 19). He also stated that the June 6th incident may have temporarily aggravated his existing condition (Horton's Deposition, p. 15) but that there was no medical evidence that he actually incurred injury (Horton's Deposition, p. 19).

The Board did not give great weight to Dr. Collins' testimony noting that Hagel had not been honest with Dr. Collins about his work history after June 6, 1986. Dr. Collins was under the mistaken impression that Hagel had been unable to work at all since June 6, 1986. (Collins' Deposition, pp. 62, 75).

The testimony of Drs. Lindig and Horton is substantial evidence that supports the Board's findings. Accordingly, the Board's decision is AFFIRMED.

DATED this 30th day of December, 1988, at Fairbanks, Alaska.

> NIESJE J. STEINKRUGER
> Superior Court Judge