Fannie SUMMERVILLE, Appellant,

v.

DENALI CENTER and Fidelity and
Casualty, Inc., Appellees.

No. S–3793.

Supreme Court of Alaska.

May 24, 1991.

.

Michael J. Jensen, Anchorage, for appellant.

James E. Hutchins, Faulkner, Banfield, Doogan & Holmes, Anchorage, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

This appeal arises from the denial of temporary and permanent total disability benefits to Fannie Summerville by the Alaska Workers' Compensation Board (board). Summerville's physical and mental impairments have prevented her from working since she fell while employed as a housekeeper at the Denali Center. Summerville received rehabilitation services for almost three years, paid for by Denali Center. On May 11, 1988, a Rehabilitation Administrator (RA) denied Summerville further rehabilitation benefits on the ground that rehabilitation would not enable her to return to suitable gainful employment. Following the RA's decision, Summerville applied to the board for temporary and permanent total disability benefits. The board denied benefits on the ground that regular and continuous employment was available to her.

In reviewing this case, we must first address the relationship between an RA and the board. Summerville argues that the doctrine of res judicata bars the board's reconsideration of the issue of whether suitable gainful employment is available to her. We disagree. Since we conclude that the board's decision is supported by substantial evidence, we affirm the board's denial of disability benefits.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

Fannie Summerville is in her fifties. She cannot read or write and has engaged in only physical labor during her life. She moved to Fairbanks in 1983 and within a month after her arrival began working as a housekeeper for Denali Center.

Prior to this job, Summerville had little work experience. While growing up in Texas, she picked cotton. After she married and moved to California, she worked briefly as a nurse's aide. She also sorted and stapled tags on clothes for the Salvation Army for seven months in 1983. Otherwise, Summerville remained at home to take care of her children.

On January 28, 1985, Summerville slipped and fell at work, injuring her hip, lower back, right ankle and index finger. She has received frequent medical treatment and physical therapy since her injury. She has been unable to work as a result of various health problems, some not directly related to her fall at work. Summerville suffers from muscle tension, headaches, depression and anxiety.

In June 1985 Alaska Placement Services, Inc. (APS) began providing vocational rehabilitation services to Summerville. APS prepared a vocational rehabilitation services plan for her with on-the-job training as a sorter/tagger or a self-service attendant or cashier. Informal labor market contacts indicated that these positions appeared to be readily available in the market and did not require extensive reading, standing or walking. Summerville received some tutor-

---

1. Summerville also argues that the board erred in not allowing the record to be reopened to include the affidavit of Teresa Blais. We find Summerville's argument on this point to be without merit. While title 8, section 45.074(d) of the Alaska Administrative Code (AAC) authorizes the board to "grant further hearings for good cause," the regulation does not require the board to do so.

Matters of evidence are within the board's discretion. 8 AAC 45.120 (1991 Supp.). The board did not abuse its discretion by denying Summerville's request to reopen the record. First, the facts in Blais's affidavit were available to Summerville at the time of the hearing. Second, inclusion of the affidavit would deny Denali Center's right of cross-examination. *See Employers Commercial Union Ins. Group v. Schoen*, 519 P.2d 819, 822–24 (Alaska 1974). Finally, reopening the record would frustrate the valid interest of the board and of the parties in finality. *Interior Paint Co. v. Rodgers*, 522 P.2d 164, 169 (Alaska 1974).

ing through the Literary Council to improve her reading. APS placed Summerville's file on hold when she moved to Anchorage in September 1985.

Following her move to Anchorage, Summerville was referred to Collins and Associates, Inc. (C & A) for further vocational rehabilitation assistance. Summerville continued to experience pain and anxiety and felt unable to return to work. C & A decided to delay vocational rehabilitation until Summerville's medical condition stabilized.

Patricia Scott, a vocational rehabilitation counselor with C & A, began job development for Summerville in December 1986. Despite some indications to the contrary, Summerville remained unwilling to return to work because of her disability.

Denali Center paid Summerville temporary total disability benefits from January 29, 1985, to May 11, 1987. On May 15, Denali Center filed a Notice of Controversion.

A formal rehabilitation conference was held in September before Rehabilitation Administrator Deborah Torgerson. The RA addressed the issue of whether Summerville was non-cooperative concerning rehabilitation efforts and whether Denali Center was obligated to provide additional rehabilitation services. In her Decision and Order, Torgerson found that Summerville was entitled to a vocational rehabilitation services plan with not more than 60 days of direct job placement/on-the-job training. Neither party appealed this decision.

Later all parties approved a vocational rehabilitation services plan for Summerville's return to work at a dry cleaning establishment as a counter attendant. Placement as a child or adult care attendant was also initially considered. However, Summerville's psychologist, Dr. David Williams, believed that Summerville should not work with children because of her anxiety disorder.

Over the 60–day period, C & A identified approximately 69 job leads. Summerville cooperated with these efforts. She reported to C & A three times a week at which time she made telephone calls, reviewed help wanted ads, practiced interview techniques, and completed employment applications.

These efforts were unsuccessful in finding Summerville employment. Teresa Blais, a counselor with C & A, attributed Summerville's lack of success to her inability to read or write. The various physical problems Summerville reported on her job applications also contributed to her inability to secure a job.

A second formal rehabilitation conference was held before Ms. Torgerson on May 2, 1988, to consider whether Summerville was entitled to further rehabilitation services. Torgerson determined that Summerville was not entitled to further rehabilitation because these services would not be likely to return her to suitable gainful employment. Neither Denali Center nor Summerville appealed this decision.

Summerville's benefits ceased in May. In September the board held a hearing to determine whether Summerville was entitled to temporary total disability or permanent total disability benefits. The board heard Summerville's testimony as well as that of Mr. William Skilling, a vocational rehabilitation counselor who performed a job analysis at the request of Denali Center. In November the board issued its Decision and Order, denying Summerville's claim. The board concluded that work within Summerville's capacities was regularly available and that lack of motivation and physical problems not related to her work injury were her primary impediments to re-employment.

Summerville appealed the board's decision to the superior court. AS 23.30.125; Appellate Rule 609(b). The superior court affirmed the board's denial of benefits. Summerville appeals.

## II. DISCUSSION

A. Is the Board Bound by the Rehabilitation Administrator's Decision that Further Rehabilitation Would Not Enable Summerville to Return to Suitable Gainful Employment?

■ The nature of the relationship between an RA and the board is a question of

statutory interpretation. We have previously stated, "Statutory interpretation is within the scope of the court's special competency, and it is our duty to consider the statute independently." *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 904 (Alaska 1987) (quoting *Union Oil Co. of California v. Department of Revenue*, 560 P.2d 21, 23 (Alaska 1977)).

 Summerville argues that the doctrine of res judicata bars the board's reconsideration of the issue of whether suitable gainful employment is available to her. Res judicata precludes a subsequent suit between the same parties asserting the same claim for relief when the matter raised was or could have been decided in the first suit. *State v. Smith*, 720 P.2d 40, 41 (Alaska 1986). We conclude that res judicata does not apply in this case because separate suits are not involved and because the board decided separate questions. Summerville mistakenly equates a rehabilitation plan that will enable a person to return to suitable gainful employment with the availability of suitable gainful employment.

The RA's role is a narrow one. The function of an RA is to review a rehabilitation plan and decide whether to approve, modify or deny the plan. Former AS 23.-30.041(f).[2] In this case, the RA's role was simply to determine whether Summerville was entitled to further vocational rehabilitation services. The RA decided that further rehabilitation services would not enable Summerville to return to suitable gainful employment[3] within the seventy-four week limit under former AS 23.30.041(g); hence, she was not entitled to further participation in a plan. The issue of total disability, however, is beyond the scope of the RA's authority.

The board, not the RA, is authorized to decide whether Summerville is entitled to temporary or permanent total disability benefits. The Alaska Workers' Compensation Act (Act) authorizes the board to "hear and determine all questions in respect to [a] claim." Former AS 23.30.110(a). The board selects RA's for the explicit purpose of implementing the provisions of the rehabilitation statute. Former AS 23.30.041(a) & (b).[4] The board must accept an RA's decision concerning rehabilitation services that has not been appealed, but is not bound by the RA's underlying factual findings.

Summerville implies that she is the victim of a "Catch–22." She is without rehabilitation services because the RA concluded that further services would not make her employable. The board, however, concluded that employment was available to her and therefore denied her temporary and permanent disability benefits.

2. The Alaska Workers' Compensation Act was amended significantly in 1988. The 1988 amendments apply only to injuries sustained on or after July 1, 1988. Ch. 79, § 48, SLA 1988. Since Summerville was injured in 1985, the former law applies. Nevertheless, our decision concerning the relationship between the RA and the board would be the same under the current statute.

Former AS 23.30.041(f) provided:
The employer and employee may agree on a vocational rehabilitation plan. If the employer and employee fail to agree on a vocational rehabilitation plan, any of the parties may submit a plan for approval to the rehabilitation administrator. The rehabilitation administrator shall approve, modify, or, deny a plan within 14 days after the plan is submitted. Within 10 days of the rehabilitation administrator's decision any party may seek review of the decision by requesting a hearing in accordance with AS 23.30.110.

3. Former AS 23.30.041(d)(1) provided:
A full evaluation by a qualified rehabilitation professional shall include a determination whether a rehabilitation plan is necessary and shall include the following specific determinations:
(1) whether the rehabilitation plan will enable the employee to return to suitable gainful employment;

4. Former AS 23.30.041(a) provided:
The board shall select and employ a rehabilitation administrator and may authorize the rehabilitation administrator to select and employ additional rehabilitation staff. The rehabilitation administrator is in the partially exempt service under AS 39.25.120.
Former AS 23.30.041(b) provided:
The rehabilitation administrator shall implement the provisions of this section, and study the issue of rehabilitation, both physical and vocational, on a continuing basis.

Summerville might have avoided this apparent dilemma if she had appealed the RA's decision. Perhaps she did not appeal the decision because she had no interest in further rehabilitation, having pursued this course for three years without success. Yet we need not speculate on her reasons. In seeking disability benefits Summerville now is asking the court to limit the board's authority to determine whether such benefits are appropriate by binding the board to the RA's factual findings. The Act precludes giving such effect to the RA's decision.

**B. Is the Board's Decision Denying Summerville Disability Benefits Supported by Substantial Evidence?**

■ An employee is not entitled to either temporary or permanent total disability benefits if there is regularly and continuously available work in the area suited to the claimant's capabilities. This principle follows from the criteria for determining disability articulated in *Vetter v. Alaska Workmen's Compensation Board*, 524 P.2d 264, 266–67 (Alaska 1974), and the "odd-lot" doctrine explained in *J.B. Warrack Co. v. Roan*, 418 P.2d 986, 988 (Alaska 1966). "For workmen's compensation purposes total disability does not necessarily mean a state of abject helplessness." *Warrack*, 418 P.2d at 988. The "odd-lot" doctrine entitles an injured employee to total disability benefits if the employee is unable to perform services other than those "which are so limited in quality, dependability or quantity that a reasonably stable market for them does not exist." *Id.; see also Hewing v. Peter Kiewit & Sons*, 586 P.2d 182, 187 (Alaska 1978); Larson, 2 *The Law of Workmen's Compensation*, § 57.51 (1989).

■ The board found that steady employment was available to Summerville. We will affirm the board's factual findings where "there is substantial evidence in light of the whole record that a reasonable mind might accept as adequate to support the board's conclusion." *Delaney v. Alaska Airlines*, 693 P.2d 859, 863 (Alaska 1985). We find substantial evidence in the record to support the board's conclusion.

William P. Skilling, a Washington vocational rehabilitation counselor, testified that suitable gainful employment was available to Summerville. His testimony was based on his review of Summerville's claim file and a labor market survey he completed of the Anchorage market. Skilling identified thirteen job categories within the physical restrictions set by Summerville's physician and within Summerville's limited educational skills. After talking with about twenty-five Anchorage employers, Skilling concluded that jobs in these thirteen categories were regularly and continuously available to Summerville.

The board also relied on reports of Summerville's various rehabilitation counselors. In its decision, the board reviewed the job possibilities available to Summerville since rehabilitation counseling began in 1985. The board found that Summerville's inability to find work was due to her unwillingness to work rather than the unavailability of jobs within her limited capabilities. Evidence in the rehabilitation counselors' reports supports this finding.

■ Admittedly there is evidence in the record that contradicts the board's finding that regular and continuous employment is available to Summerville. Weighing the evidence, however, is the role of the board, not of this court. *Miller v. ITT Arctic Services*, 577 P.2d 1044, 1049 (Alaska 1978). In addition, the board has the sole power to determine the witnesses' credibility. AS 23.30.122; *Resler v. Universal Services, Inc.*, 778 P.2d 1146, 1149 (Alaska 1989).

AFFIRMED.